UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

T COM LLC, HAROLD CAPRON, and )
PENNY CAPRON, )
 )
      **Plaintiffs,** )
 )
v. ) Case No. 10-CV-0498-CVE-FHM
 )
SOS TELEDATA, INC., LIMAS )
COMMUNICATIONS, INC., DONALD )
HOLLIS, MARLA HOLLIS, PEGGY SHOPE, )
WALTER SHOPE, SR., WALTER SHOPE, JR.,)
RICHARD SHOPE, and JOE PERRY, )
 )
      **Defendants,** )
 )
v. )
 )
WEST AMERICAN INSURANCE )
COMPANY and OHIO CASUALTY )
INSURANCE COMPANY, )
 )
      **Garnishees.** )

## OPINION AND ORDER

Now before the Court are the following ten motions: Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against T Com LLC, and Supporting Brief (Dkt. # 70); Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against Harold Capron, and Supporting Brief (Dkt. # 72); Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against Penny Capron, and Supporting Brief (Dkt. # 74); Motion for Summary Judgment of Garnishee West American Insurance Company Against T Com LLC, and Supporting Brief (Dkt. # 76); Motion for Summary Judgment of Garnishee West American Insurance Company Against Harold Capron, and Supporting Brief (Dkt. # 78); Motion for Summary Judgment of Garnishee West American Insurance Company Against Penny Capron, and Supporting

Brief (Dkt. # 80); Plaintiffs' Motion for Summary Judgment (Dkt. # 82); Motion to Strike Inadmissible Evidence Submitted with Plaintiffs' Motion for Summary Judgment and Brief (Dkt. # 92); Motion to Strike and Supporting Brief (Dkt. # 113); and Garnishee's Counter-Motion to Strike Directed to Plaintiffs' Motion (Dkt. # 115).

This is a garnishment action in which plaintiffs attempt to collect funds of garnishees based on state court judgments against garnishees' insureds. Unfortunately, the facts underlying the state court judgments are convoluted, and the summary judgment record does not substantially clarify the nature of the parties' relationships, the nature of the liability imposed by the state court judgments, or the particular relief sought or awarded in the state court proceeding. Regardless of these omissions and obfuscations, the Court is able to rule on the ultimate issue, namely whether the judgment debtors' insurance provides coverage for the particular injuries sustained by plaintiffs. The Court finds that, despite the peculiar record in the state court action, construing all disputed or unknown material facts in favor of plaintiffs, and assuming the validity of the state court judgments, summary judgment should be granted in favor of the garnishees.

**I.**

This garnishment action arises out of a suit filed by plaintiffs T Com, LLC (T Com), Harold Capron, and Penny Capron against defendants. T Com is an Oklahoma limited liability company consisting of several members including plaintiff Harold Capron.[1] Defendant Limas Communications, Inc. (Limas) is a Colorado corporation and was, during the relevant time period,

---

[1] The record is unclear as to the other members of T Com. The garnishees' amended answers allege that Limas was also a member of T Com. Dkt. # 56 at 2; Dkt. # 57 at 2. In addition there is some uncertainty as to whether Penny Capron was a member of T Com. Dkt. # 56 at 2-3; Dkt. # 57 at 2-3. However, the exact ownership of T Com is not material to the issues currently before the Court.

owned by defendants Donald Hollis, Marla Hollis, and Joe Perry.[2] Dkt. # 56 at 3. Defendant SOS Teledata, Inc. (SOS) is a Colorado corporation whose owners, officers, and directors included defendants Peggy Shope, Walter Shope, Sr., and Richard Shope.[3] In March 1999, SOS, Limas, and T Com entered into a contract under which SOS and Limas were obligated to acquire rights to an encroachment of an easement and assign those rights to T Com.

In September1999, plaintiffs sued defendants in the District Court of Tulsa County alleging breach of contract, fraud, and breach of fiduciary duty. See Dkt. # 76-3. Plaintiffs alleged that defendants had breached the contract by not acquiring the easement. The petition also alleged that defendants made fraudulent misrepresentations to plaintiffs and breached their fiduciary duties to plaintiffs. Defendants SOS, Limas, Peggy Shope, and Donald Hollis filed counterclaims against plaintiffs for breach of contract, fraud, breach of fiduciary duty, negligent misrepresentation, and tortious interference. Dkt. # 83-3. In July 2003, almost four years after the petition was filed, plaintiffs amended the petition, withdrawing the breach of fiduciary duty claim, adding claims of negligence and vicarious liability, and requesting punitive damages. Dkt. # 76-4. Plaintiffs alleged that Donald Hollis and Marla Hollis were "not qualified or fit to run any company" and that the "Defendants other than Donald Hollis and Marla Hollis" were negligent in the hiring, supervision, and retention of the Hollises. Dkt. # 76-4 at 9-10. Plaintiffs also alleged that they were entitled to punitive damages based on the "fraudulent misrepresentations" of defendants. Id. at 10-11. Lastly,

---

[2]  The amended petition also alleges that defendants Peggy Shope, Walter Shope, Sr., Walter Shope, Jr., and Richard Shope are owners, officers, or directors of Limas. Dkt. # 76-4 at 3. Their precise relationship with Limas is not material to the issues currently before the Court.

[3]  Plaintiffs contend that Donald Hollis and Marla Hollis were also officers and employees of SOS. Dkt. # 83 at 2, n.1. Their precise relationship with SOS is not material to the issues currently before the Court.

plaintiffs alleged that Limas and SOS were vicariously liable for the acts of the individual defendants. Id. at 11.

The state court proceeding was resolved by three separate judgments. On May 20, 2005, the state court entered an order awarding plaintiffs summary judgment on all defendants' counterclaims. Dkt. # 70-5. The order also granted summary judgment in favor of SOS, Limas, Peggy Shope, Walter Shope, Sr., Richard Shope, and Joe Perry on all plaintiffs' claims.[4] Id. The order directed the prevailing party to prepare an appropriate journal entry. Before the journal entry was submitted, on September 28, 2006, the state court entered judgment "in favor of Harold Capron and Penny Capron, and against Donald G. Hollis and Marlene Moore Hollis,[5] jointly and severally, for $1,000,000 actual damages and for $200,000 punitive damages. This judgment shall be on the claim for negligence only." Dkt. # 70-7 at 1. On November 27, 2006, the state court entered the "Agreed Journal Entry of Judgment" (Dkt. # 70-8) contemplated by the earlier summary judgment order. The Agreed Journal Entry of Judgment states that judgment is entered in favor of Peggy Shope, Walter Shope, Sr., Walter Shope, Jr., Richard Shope, and Joe Perry. The judgment further states:

> Judgment for vicarious liability for the negligence of the Hollises is hereby entered, by consent of the parties and with the approval of the Court, against the Corporate Defendants [SOS and Limas] and in favor of the Plaintiffs. The amount of the judgment is $1,000,000 in

---

[4] The order states that "Defendant's Motion for Summary Judgment on all Plaintiffs' claims is also granted." Dkt. # 70-5 at 2. The state court uses the singular for defendant. However, the state court docket shows that the pending summary judgment motions had been filed by defendants SOS, Limas, Peggy Shope, Walter Shope, Sr., Richard Shope, and Joe Perry. Dkt. # 70-6 at 33. Thus, it appears that summary judgment was granted in favor of these defendants.

[5] The summary judgment record does not identify "Marlene Moore Hollis." However, the Court presumes, based on the entirety of the record, that this refers to defendant "Marla Hollis."

4

> actual damages, which reflects vicarious liability by the Corporate
> Defendants for the judgment for actual damages entered against the
> Hollis Defendants on the 29th day of September, 2006. . . . Judgment
> is hereby entered, by consent of the parties and with the approval of
> the Court, in favor of the Corporate Defendants and against Plaintiffs
> on all claims other than vicarious liability for the negligence of the
> Hollises.

Id. at 4. On December 27, 2006, the state court entered a judgment awarding attorneys fees, costs, and interest to plaintiffs and against Donald Hollis and Marla Hollis. Dkt. # 70-9.

On July 6, 2010, plaintiffs commenced this garnishment action in state court against West American Insurance Company (West American) and Ohio Casualty Insurance Company (Ohio Casualty) (collectively, the garnishees). The garnishees removed the action. West American had issued a commercial general liability insurance policy to Limas, which covered the period June 30, 1999 to June 30, 2000. Dkt. # 76-11. Ohio Casualty had issued a commercial general liability insurance policy to SOS, which covered the period June 15, 1999 to June 15, 2000. Dkt. # 70-11. Plaintiffs contend that the amounts owed by SOS, Limas, Donald Hollis and Marla Hollis (collectively, the judgment debtors)[6] pursuant to the state court judgments are covered by these insurance policies. Thus, plaintiffs contend that the garnishees are liable for these amounts. The garnishees contend that the judgment debtors, and thereby plaintiffs, are not entitled to insurance coverage for the incidents underlying the state court judgments. Plaintiffs and the garnishees have filed cross-motions for summary judgment.

---

[6] The garnishment affidavits filed by plaintiffs additionally identify Peggy Shope, Walter Shope, Sr., Walter Shope, Jr., Richard Shope, and Joe Perry as judgment debtors. Dkt. # 70-10 at 3, Dkt. # 80-8 at 3. However, there is nothing in the summary judgment record that identifies a judgment against these defendants. To the contrary, the Agreed Journal Entry of Judgment states that judgment was granted in favor of these defendants. Dkt. # 70-8 at 4. Thus, it appears that these defendants were included on the garnishment affidavits in error and that these defendants have no interest in the pending garnishment proceeding.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

# III.

**A.     Motions to Strike**

Before addressing the substance of the parties' summary judgment motions, the Court must adjudicate the three pending motions to strike. It is well-settled law in the Tenth Circuit that a court may consider only admissible evidence in ruling on a motion for summary judgment. Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998). "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but 'the content or substance of the evidence must be admissible.'" Adams v. Amer. Guar. and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting Wright-Simmons, 155 F.3d at 1268)).

Garnishees' Motion to Strike Plaintiffs' Exhibit  (Dkt. # 92)

In their summary judgment motion, plaintiffs repeatedly cite to the transcript of a hearing in the state court action in which Harold Capron and Penny Capron testified regarding the alleged injuries they sustained as a result of the judgment debtors' negligence. Dkt. # 83-8. While several topics are addressed in the hearing transcript, plaintiffs admit that they cite the transcript "in connection with the nature and extent of the damages suffered by Plaintiffs . . . ." Dkt. # 109 at 1. The garnishees argue that this transcript is inadmissible hearsay and should be stricken from the summary judgment record. While it is not clear that "the content or substance" of the Caprons' testimony would be inadmissible at trial, the Court need not reach the issue of whether the transcript must be stricken. As discussed more fully infra, the Court presumes for purposes of summary judgment that the Caprons suffered bodily injuries as defined by the relevant insurance policies. Thus, the Court need not consider the state court hearing transcript, and the garnishees' motion to strike (Dkt. # 92) is deemed moot.

Plaintiffs' Motion to Strike (Dkt. # 113) and Garnishees' Motion to Strike (Dkt. # 115)

Plaintiffs move to strike evidence submitted by the garnishees in connection with their response to plaintiffs' summary judgment motion. In response, the garnishees move to strike plaintiffs' motion to strike. The Court will first address the garnishees' motion.

The garnishees argue that plaintiffs' motion to strike should be stricken pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) allows a court to strike material from a pleading in certain circumstances. However, "[m]otions and memoranda are not included within the definition of 'pleading' under F.R.C.P. 7(a)." Searcy v. Soc. Sec. Admin., 956 F.2d 278 (10th Cir. 1992) (unpublished).[7] "Generally, therefore, motions, briefs, and memoranda may not be attacked by a motion to strike." Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009). Thus, plaintiffs' motion cannot be stricken pursuant to Fed. R. Civ. P. 12(f). The garnishees' motion (Dkt. # 115) to strike plaintiffs' motion is denied.

In their motion to strike, plaintiffs argue that the garnishees cannot cite to material that is not within the underlying state court record. Plaintiffs contend that the "scope of this Court's review is limited to the 'judgment roll' in the State Court." Dkt. # 113 at 1. In support of this contention, plaintiffs argue that the garnishees are attempting to "raise an impermissible collateral attack against the enforceability" of the state court judgments and that such an attempt "violates the *Rooker-Feldman* doctrine." Id. at 2, 5. Plaintiffs have attempted to make this argument previously in this case and failed. In the Opinion and Order (Dkt. # 53) granting garnishees' motion to file amended answers, this Court stated that:

---

7   This and other unpublished decisions are not precedential, but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

8

> [T]he Tenth Circuit Court of Appeals has explicitly stated that a federal district court's consideration of whether an insurer has the duty to indemnify an insured as the result of a state court judgment is not a collateral attack, as "the fact that the judgment remains valid against [the defendant] is not inconsistent with the conclusion that the insurers are not required to indemnify him for it." Cont'l Cas. Co. v. Hempel, 4 Fed. Appx. 703, 721 (10th Cir. 2001)(unpublished). . . . Here, the garnishees are not attacking the validity of the state court judgment against the defendants. Instead, they challenge their obligation to indemnify the defendants for losses resulting from that judgment. Such a challenge is not a collateral attack on the state court judgment, and the Court rejects plaintiffs' argument on that ground."

Dkt. # 53 at 6-7.[8] See also Brockmann v. Bd. of Cnty. Comm'r, 404 Fed. Appx. 271, 281 (10th Cir. 2010) (unpublished) ("Therefore, while it is true that a judgment is generally subject to collateral attack only if it is void, an insurer may challenge a settlement or non-jury judgment in a garnishment action against the insurer to enforce the insurance contract."). Thus, the garnishees' argument regarding insurance coverage is not a collateral attack on the state court judgments. Plaintiffs have not cited any legal authority for the proposition that, in a garnishment proceeding, a court is prohibited from considering evidence outside the state court record. Because plaintiffs have presented no legitimate basis upon which the garnishees' evidence should be stricken, plaintiffs' motion (Dkt. # 113) is denied.

**B.     Summary Judgment Motions**

Plaintiffs argue that they are entitled to summary judgment because the plain language of the insurance policies issued to the judgment debtors by the garnishees provides coverage for the

---

[8]     In addition to arguing that the judgment debtors are not entitled to coverage for losses imposed by the state court judgments, the garnishees do, in fact, attack the validity of the state court judgments. However, as discussed more fully infra, this argument will not be considered; for purposes of summary judgment, the Court presumes the validity of the state court judgments.

9

liabilities imposed by the state court judgments. The garnishees move for summary judgment against the plaintiffs on the ground that the occurrences remedied by the state court judgments do not qualify as covered injuries under the plain language of the insurance policies. In addition, the garnishees argue that the state court judgments are not valid and that certain policy exclusions prohibit coverage. The Court finds that, construing all facts in the light most favorable to plaintiffs, the garnishees are entitled to summary judgment based on the plain language of the policy. Thus, the Court need not reach the issue of whether the state court judgments are valid or whether policy exclusions apply.[9]

---

[9] The garnishees argue that the state court judgments are invalid both for procedural reasons and because there was fraud or collusion in the procurement of the judgments. The Court has studiously avoided addressing any potential collusion in connection with the state court judgments. However, the following circumstances call into question the legitimacy of those judgments: The amended petition alleges negligent hiring, supervision, and retention, and requests punitive damages for misrepresentations. However, there is no allegation that defendants had any duty to plaintiffs, other than that arising from the contract. This is especially true for Penny Capron, given that there is some dispute as to whether she was ever a member of T Com and, thus, ever had any dealings with defendants. It is further not lost on the Court that plaintiffs were represented in the state court proceeding by their son, Stephen Capron, who at one point was alleged to have been a member of T Com, and who conducted substantial discovery related to the solvency of the defendants in an alleged attempt to determine whether they would be able to satisfy any theoretical judgment. There are numerous statements in the record by Stephen Capron to defendants' attorney that he would like to pursue the possibility of obtaining a judgment that would be covered by the defendants' insurance policies. The petition was not amended to add the negligence claims until after these events took place. Further, the judgments against the Hollises and against Limas and SOS were entered after the state court had already granted summary judgment in favor of Limas and SOS. Despite the potentially insufficient pleadings and procedural inconsistencies, the Hollises, acting without an attorney, agreed to the entry of a judgment against them for $1.2 million in exchange for the promise that plaintiffs would "not undertake any collection efforts unless and until [plaintiffs] determined whether the insurance company would pay for the loss." Dkt. # 93-23 at 2 (Letter from Stephen Capron to Hollises dated March 6, 2008); see also Dkt. # 93-22 at 5 (Agreement of Donald G. Hollis and Marlene Moore Hollis to Confess Judgment in Favor of Harold H. Capron and Penny Capron, filed by Stephen Capron in the state court action on September 18, 2006). It is also troubling that Stephen Capron represented to the state court in the agreement to confess judgment that the Hollises were not "financially capable of retaining counsel . . . ." Id. at 3. However, in his deposition in this garnishment proceeding, Stephen Capron stated that he believed at the time that the Hollises had "between $500,000 and several million . . ." Dkt.# 93-28 at 4.

Choice of Law

Before addressing the merits of the summary judgment motions, the Court must determine what law governs. In diversity cases governed by state law, this Court must ascertain and apply the state law so as to reach the same result that the state court would reach. Pub. Serv. Co. of Okla. v. Burlington N. R .R. Co. 53 F.3d 1090, 1096 (10th Cir. 1995). Under Oklahoma law, where the parties do not raise a choice of law issue, the "presumption is that a contract is governed by the laws of the forum." Pace v. Nat'l Bank of Commerce of Tulsa, 125 P.2d 178, 179 (Okla. 1942). See also R.L. Clark Drilling v.Schramm, Inc., 835 F.2d 1306, 1309 (10th Cir. 1987) ("[W]here foreign law is not put in issue, Oklahoma courts presume that it is the same as Oklahoma law."); Swan Air Conditioning Co. v. Crest Constr. Corp., 568 P.2d 1330, 1335 (Okla. Civ. App. 1977) ([W]hen a party fails to plead or otherwise give reasonable notice to the court as to the foreign law to be relied on, the court will not take judicial notice of the foreign law, but will apply the law of Oklahoma with the presumption that the foreign law is the same as the law of Oklahoma.").

Neither party raised a choice of law issue until the thirteenth summary judgment brief, which was plaintiffs' reply in support of their motion for summary judgment. In their reply, plaintiffs argue, for the first time, that "Oklahoma Law Does Not Control," and conclude, after a five-sentence perfunctory argument, that "if any state's law applies, it would be North Carolina law." Dkt. # 112 at 5. Plaintiffs admit that, until this thirteenth brief, the parties "have not asserted that a particular state's law controls." Dkt. # 112 at 5. As an initial matter, plaintiffs cannot raise a new argument in a reply brief and this argument should not be considered on that basis alone. See Vandever v. Osage Nation Enter., Inc., No. 06-CV-380-GKF-TLW, 2009 WL 702776, at *6 (N.D.

11

Okla. March 16, 2009) ("[T]he court declines to rule at this time on the argument raised for the first time in defendants' reply . . . .").

Further, plaintiffs' anemic argument that North Carolina law applies is belied by the fact that plaintiffs' briefs cite federal and state cases applying the laws of Alabama, Arizona, California, Connecticut, Georgia, Indiana, Iowa, Kansas, Louisiana, Minnesota, Missouri, Montana, New Jersey, North Dakota, Oklahoma, Texas, Utah, Virginia, and Washington. The plaintiffs' briefs cite only seven cases applying the laws of North Carolina and only two of those cases are cited prior to the reply in which plaintiffs argue that North Carlina law controls. Plaintiffs' "protest against the application of [Oklahoma] law is so feeble that it amounts to a waiver of the argument." Mauldin v. WorldCom, Inc., 263 F.3d 1205, 1211-12 (10th Cir. 2001); see also O'Neal v. Fid & Guar. Ins. Co., No. 06-CV-184-TCK-PJC, 2007 WL 1747146, at *2 (N.D. Okla. June 14, 2007) (finding that parties waived choice of law argument); Sibley v. Sprint Nextel Corp., No. 08-2064-KHV, 2008 WL 2949564, at *5, n.5 (D. Kan. June 30, 2008) (declining to address choice of law question when raised for first time in reply). Thus, the Court applies Oklahoma law to the issues presented.

Estoppel

As noted above, plaintiffs' argument that garnishees are barred from disputing the insurance coverage based on collateral estoppel is unavailing. However, plaintiffs also raise an equitable estoppel argument that, because the garnishees chose not to defend the judgment debtors in the state court action and did not file a declaratory judgment action, the garnishees are not entitled to raise policy coverage defenses in this garnishment action. Oklahoma law is clear that where a party "who is legally or contractually obligated to defend another from liability and fails to do so after being given adequate notice and an opportunity to control the litigation's defense is bound by the material

12

facts determined in a judgment against the party indemnified." Culie v. Arnett, 765 P.2d 1203, 1206, n.12 (Okla. 1988). Based on this principle, plaintiffs argue that the garnishees are bound by the state court judgments and cannot now assert defenses that could have been raised in that action. However, plaintiffs ignore the fact that the garnishees are bound only by "the material facts determined" in the state court judgments. The state court action adjudicated the defendants' liability to plaintiffs. Whether the garnishees are liable to the judgment debtors under the insurance policies was not at issue in the state court action. Because this issue was not judicially determined in the state court proceeding, the garnishees are not estopped from raising coverage as a defense in this garnishment action. Id.; see also Greene v. Circle Ins. Co., 557 P.2d 422, 424 (Okla. 1976) (overturned by statute on other grounds)(insurance company could raise coverage defenses in garnishment proceeding, but could not raise liability defenses); Henderson v. Eaves, 516 P.2d 270, 273 (Okla. 1973) (same).

Insurance Coverage

The only question remaining is whether the judgment debtors, or plaintiffs as judgment creditors, are entitled to payment under the insurance policies issued by the garnishees. "A post-judgment garnishment proceeding is a special and extraordinary remedy given only by statute, which allows a judgment creditor to secure payment of a judgment through enforcing a liability owed to the judgment debtor by a third party." Sisk v. Gaines, 144 P.3d 204, 207 (Okla. Civ. App. 2006) (internal quotations omitted). As against an insurer, the remedy is "in aid of and ancillary to the main action" against the insured and has nothing to do with the merits. Spears v. Preble, 661 P.2d 1337, 1343 (Okla. 1983). "The judgment creditor may claim no greater rights against the garnishee than the judgment debtor possesses. An insurer's liability to the insured can be neither

13

created nor enlarged in a garnishment proceeding." Sisk, 144 P.3d at 207 (internal citations omitted). Thus, plaintiffs' ability to recover from the garnishees is defined by the language of the insurance policies issued to the judgment debtors. Id.

Under Oklahoma law, "insurance polices are contracts interpreted as a matter of law." BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835 (Okla. 2005). "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." Id. "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Orthopedic Resources, Inc. v. Nautilus Ins. Co., 654 F. Supp. 2d 1307, 1312 (N.D. Okla. 2009).

The commercial general liability policy issued by West American to Limas and the commercial general liability policy issued by Ohio Casualty to SOS contain identical language and will be addressed simultaneously. The policies state that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. # 70-11 at 8; Dkt. # 76-11 at 10. The policies further state that the "insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the coverage territory; . . ." Dkt. # 70-11 at 78; Dkt. # 76-11 at 10. Plaintiffs concede that they did not suffer any property damage as a result of the judgment debtors' actions. Dkt. # 95 at 7; Dkt. # 96 at 4; Dkt. # 97 at 4 (admitting or failing to dispute garnishees' statement of undisputed material fact that plaintiffs suffered no property damage). Thus, the plaintiffs, as judgment creditors, can recover

14

under the policies only if they suffered "bodily injury" caused by an "occurrence," as those terms are defined in the policies.[10]

The policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Dkt. # 70-11 at 90; Dkt. # 76-11 at 19. Because T Com is a non-living entity, it cannot sustain a "bodily injury." See Am. Econ. Ins. Co. v. Bogdahn, 89 P.3d 1051, 1062 (Okla. 2004) ("a corporation cannot . . . sustain bodily injury . . . "). T Com does not make any argument that it sustained bodily injury covered by the policy, let alone present any evidence of bodily injury. Because there is no evidence upon which a trier of fact could find that T Com was damaged as a result of either property damage or bodily injury under the terms of the policies, there is no basis upon which to find that the judgment debtors' liability to T Com is covered under the policies. Thus, summary judgment must be granted in favor of the garnishees against T Com.

Harold Capron and Penny Capron allege that, as a result of the judgment debtors' actions, they suffered bodily injury in the form of stomach problems, vertigo, high blood pressure, depression, insomnia, headaches, and back aches. Dkt. # 78-12 at 70-71; Dkt. # 80-10 at 15-25.[11] However, bodily injury is covered under the policies only if it was the result of an "occurrence," which is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. # 70-11 at 93; Dkt. # 76-11 at 21. When

---

[10] There is no dispute that the alleged "occurrence" took place within the coverage territory.

[11] While the garnishees make cursory objections to the "unspecified" and "phantom" nature of plaintiffs' alleged bodily injuries, the garnishees do not provide any legal argument that the symptoms alleged by the Caprons do not qualify as bodily injury under the insurance policies. Dkt. # 80 at 14; Dkt.# 93 at 13.

interpreting insurance contracts with similar definitions of "occurrence," Oklahoma courts have held that "accident" "is not a technical term and the Court must construe the term in its plain and ordinary sense." Evanston Ins. Co. v. Dean, No. 09-CV-0049-CVE-TLW, 2009 WL 2972336, at *7 (N.D. Okla. Sept. 11, 2009) (citing Littlefield v. State Farm Fire & Cas. Co., 857 P.2d 65, 69 (Okla.1993)); see also Farmers Alliance Mut. Ins. Co. v. Salazar, 77 F.3d 1291, 1297 (10th Cir. 1996) ("According to the Oklahoma Supreme Court, the words, 'accident' and 'accidental' have never acquired any technical meaning in law, and when used in an insurance contract, they are to be construed and considered according to common speech and common usage of people generally.")(internal quotations omitted). The term "accident" implies that an event was unintentional or was an "unexpected happening." U.S. Fid. & Guar. Co. v. Briscoe, 239 P.2d 754, 756-57 (Okla. 1952). "An intentional or willful tort would negative the existence of an accident." Penley v. Gulf Ins. Co., 414 P.2d 305, 308 (Okla. 1966).

In order to determine whether the Caprons' injuries were caused by an "occurrence" under the terms of the policies, it is important to focus on the state court judgments and underlying allegations against judgment debtors. Plaintiffs have a judgment against the Hollises for "negligence" and a judgment against SOS and Limas for vicarious liability for the Hollises' "negligence." The judgments do not recite the precise nature of that negligence. The Court must look to the amended petition in the state court to determine precisely the nature of the negligent acts alleged to have been committed by the Hollises. Reading the amended petition broadly, in a manner most favorable to plaintiffs, the state court judgments hold the Hollises liable for negligent hiring,

16

supervision, and retention of one another,[12] and for fraudulent misrepresentations made during the negotiation of the underlying contract. The issue is whether these acts qualify as occurrences under the policies' language.

To the extent that the state court judgments hold the judgment debtors liable for negligent hiring, supervision, and retention of each other, this cannot be a basis for coverage under the policies. The Tenth Circuit, interpreting Oklahoma law, has held that "when determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." Farmers Alliance Mut. Ins. Co., 77 F.3d at 1296. The Caprons testified that their injuries were caused by the misrepresentations made by the Hollises, the breach of the contract, and the statements made in the state court counterclaim. Dkt. # 78-12, Dkt. # 80-10. Thus, the immediate causes of the injuries were the misrepresentations, the breach, and the counterclaims, not the negligent hiring, supervision, and retention of the Hollises by each other. While the negligent hiring, retention, and supervision of the Hollises by each other may have contributed to the ultimate injuries, "to determine whether there was an 'occurrence' within the meaning of the policy we must focus on those events directly responsible for the injury." Farmers Alliance Mut. Ins. Co., 77 F.3d at 1297. Because the Caprons' injuries were not directly caused by the negligent hiring, retention and supervision, such negligence cannot be considered an occurrence within the meaning of the policy.

---

[12] The amended petition alleges that "Defendants other than Donald and Marla Hollis" were negligent in the hiring, supervision, and retention of the Hollises. Dkt. # 76-4 at 9-10. Thus, there was arguably no claim against the Hollises for their own negligent hiring, supervision and retention. However, reading the amended petition broadly, in a manner most favorable to plaintiffs, there may have been an allegation that the Hollises were negligent as to the hiring, supervision, and retention of one another.

17

Id.; Allstate Ins. Co. v. Fox, 139 F.3d 911 (10th Cir. 1998) (unpublished) (holding that occurrence under insurance policy must be direct cause of injuries). Even if the Caprons could show that their injuries were directly caused by the negligent hiring, supervision, and retention of the Hollises, there is no evidence that such negligence was unintentional or unexpected such that it could be considered an "accident" under the terms of the policies. For these reasons, the negligent hiring, supervision, and retention of the Hollises does not constitute an "occurrence" and does not entitle plaintiffs, or judgment debtors, to insurance coverage.

To the extent that the state court judgments hold the judgment debtors liable for fraudulent misrepresentation, this is also not a basis for coverage under the policies. Plaintiffs have not presented any evidence that the misrepresentations made by the judgment debtors were made unintentionally or unexpectedly such that they could be considered an accident. In fact, the amended petition alleged that defendants' actions regarding the misrepresentations were "intentional, calculated and malicious." Dkt. # 76-4 at 11. Thus, there is no basis on which a trier of fact could find that the misrepresentations were an "occurrence" under the insurance policies. See Farmers Alliance Mut. Ins. Co., 77 F.3d at 1297 (affirming summary judgment where event causing injuries was intentional and, thus, could not be an occurrence under the policy).

Plaintiffs also claim that their injuries were caused by statements made in the defendants' counterclaims in the state court action. It is not clear that these statements were encompassed in the state court's judgments. Regardless, the counterclaim statements are not an occurrence under the policies because there is no evidence on which to find that the counterclaims were filed unintentionally or accidentally.

Likewise, if none of the Hollises' actions is an "occurrence," any vicarious liability of SOS and Limas for such actions is not covered under the policies.

Having construed all facts in the light most favorable to plaintiffs, the Court finds that the plaintiffs' injuries were not caused by an occurrence as defined in the insurance policies and under Oklahoma law. Thus, insurance coverage is not available to the judgment debtors and summary judgment must be granted to the garnishees.

**IT IS THEREFORE ORDERED** that the Motion to Strike Inadmissible Evidence Submitted with Plaintiffs' Motion for Summary Judgment and Brief (Dkt. # 92) is **deemed moot**; the Motion to Strike and Supporting Brief (Dkt. # 113) is **denied**; and the Garnishee's Counter-Motion to Strike Directed to Plaintiffs' Motion (Dkt. # 115) is **denied**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against T Com LLC, and Supporting Brief (Dkt. # 70) is **granted**; the Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against Harold Capron, and Supporting Brief (Dkt. # 72) is **granted**; the Motion for Summary Judgment of Garnishee Ohio Casualty Insurance Company Against Penny Capron, and Supporting Brief (Dkt. # 74) is **granted**; the Motion for Summary Judgment of Garnishee West American Insurance Company Against T Com LLC, and Supporting Brief (Dkt. # 76) is **granted**; the Motion for Summary Judgment of Garnishee West American Insurance Company Against Harold Capron, and Supporting Brief (Dkt. # 78) is **granted**; the Motion for Summary Judgment of Garnishee West American Insurance Company Against Penny Capron, and Supporting Brief (Dkt. # 80) is **granted**; and Plaintiffs' Motion for Summary Judgment (Dkt. # 82) is **denied**. A separate judgment is entered herewith.

**DATED** this 2nd day of April, 2012.

CLAIRE V. EAGAN  
UNITED STATES DISTRICT JUDGE